Good afternoon. How are you? If it may please the Court, my name is Joanne Needleman, and I represent the appellant, the Law Offices Of Mitchell N.Kay. I'll refer to them as the Mitchell K. Law Firm throughout my argument. Very briefly, this is about two settlement letters that were sent by the Mitchell K. Firm to Mr. Lesher. Both letters were on letterhead, identified the firm, the jurisdiction where the attorneys of the firm practiced, identified the creditor, and the amount that was owed. In the first letter, the statement was that we are offering you an opportunity to settle. There is the G disclosure from the FDCPA, and on the back of the letter there is a statement that says at no time an attorney has reviewed the particular circumstances of this account. A similar letter was sent about a month later. Based on those two letters, the lower court has held that any letter from an attorney is actionable under the FDCPA unless the attorney's intent is disclosed regarding litigation. I would say that a decision like that completely, in many respects, rewrites the FDCPA. It certainly makes E-5 superfluous. Doesn't the least, most sophisticated debtor think that litigation is forthcoming or possibly forthcoming when he receives a letter such as that from a lawyer? I would say I can understand that, Your Honor, and that's certainly what the district court had indicated, but if you look at E-5 and you look at the intent of E-5, you look at the intent of E. Well, look at 3, 5, and the general control provision, not just 3 or 5. Well, if you look at E-3 and E-5 are a little bit different because in E-5 you can't have the implication. It's not the act of sending the letter. It is what is stated in the letter, and what the lower court did not do in this case is look at the body of the letter. They concluded it was the sending of the letter that was the implication. Even if we agree with you on E-5, talk about E-3 and E-10. How do you get around particularly E-3? You get around E-3, and I think this court has explored E-3 in the Rosenau case, Your Honor. Right. E-3 is a very simple question. Was there an attorney involved or not? Yes or no? And you have to look at the letter to make that decision, and that's exactly what you did in the Rosenau case. In the Rosenau case, it was a letter from a legal department, and the court said, are there lawyers in the legal department? And the answer was no. Which was hard to believe, but go ahead. But that was the facts of that case. So like E-5 and E-10 and E-3, it's about what the letter says, and is the letter false? Your position is there's no lawyer involved in this? Our position is the letter is not false. No, no, no, no. My question to you is, is it your position that in sending this letter, no lawyer is involved? That's what the letter said, Your Honor, yes. That's your position? Well, how can that be when the letterhead clearly says it's from an attorney at law? Let me backtrack. There was an attorney involved. There was an attorney involved, and the record reflects that the Mitchell K firm was involved and supervised and authorized the sending of the letter to Mr. Lesher, which communicated a settlement offer. That was the involvement of the attorney. That's what the record reflects, and that was the extent of their involvement, and that's what the letter reflected. The cases that you have had an opportunity to look at in this circuit and other circuits have looked at involvement because there was something in the letter that would say, even to the least sophisticated consumer, that there was more involvement than actually happened. In this case, what was stated in the letter was at no time we had reviewed the particular circumstances, but they were involved in sending the letter. So in this case, your position is the least sophisticated debtor would not think a lawyer was involved. A least sophisticated consumer would know that there is a law firm that is handling the case and is communicating a settlement offer. That's what the record says. Isn't that the same thing instead of going around in circles and saying, in some way you don't know exactly, but a lawyer is involved? Well, and that's communicated. The issue in this case is that's what is being communicated in this letter. If you look at the two letters, the letters are not communicating anything more than what the Mitchell K Law Firm did in this case. If the letter said, the attorney, we have received this file from our client and we have concluded that suit is eminent or made some statement like that, that would be a false letter because that's not what happened here. What was communicated was the actual involvement at the time that the letter was sent and a settlement opportunity. So basically your position is the mere fact that it's on letterhead from a lawyer does not implicate that actual action is forthcoming. That is correct, Your Honor. There are district courts that have – Wait a minute. How can you have – I'm sorry to step on both you and Judge Cowan. That's okay. How can you have a letter from a law firm without having an attorney? We didn't say there wasn't an attorney. Because you can't have a – you'll acknowledge with me that you have to have an attorney to have a law firm. Absolutely. All right. Absolutely. We get that point out of the way. We can agree on that, Your Honor. So if you see you're the least sophisticated consumer and you see this letterhead from a law firm, why isn't it reasonable for that least sophisticated consumer to assume that an attorney is involved? It's not unreasonable, Your Honor. I'm not saying that they can say it's involved. The issue is what is the level of involvement. Is the level of involvement being communicated truthfully? That's what the E3 cases were really about, that the level of – But that's not what Rosenau said. No. What you said in Rosenau, as I indicated, Rosenau said is, number one, you have a legal department that doesn't employ any lawyers. That's a false letter in and of itself. You said, and you got to that conclusion, because the least sophisticated consumer would look at this letter and say if I'm getting a letter from a legal department that there was an attorney involved in the making or sending of that letter based on what the letter said. That was your decision in Rosenau, and it was accurate. I'm not saying that an attorney is not involved. I'm saying that it communicates. Well, in fact, you said an attorney is involved. You've said it here and you've said it in your briefing, right? What we've said is we've communicated the true and accurate level of involvement. Those were really what the E3 cases are about. Now, if we adopt the meaningful involvement doctrine, do you lose? Not necessarily. No, I would say we do not lose because, first of all, I would strongly discourage this Court to adopt the meaningful involvement. I said if. No, we do not lose because the meaningful – first of all, the meaningful doctrine, the meaningful involvement doctrine is really a backdoor and after-the-fact analysis of what happened, what was the attorney doing at the time that the letter was sent. In this case, there's nothing false about the letter. The letter says, communicates a settlement offer, and it says on the back, I haven't looked at the particular circumstances of this case. All I am doing right now as an attorney, as the attorneys of Mitchell K. are doing, is communicating a settlement offer. If there was something more in that letter that said something else, fine, penalty. Well, putting aside whether putting a disclaimer on the back is meaningful, put that aside for one moment. But if the lawyer is not involved in this, why didn't he just send a letter from the collection XYZ company instead of sending the letter on attorney-at-law letterhead if there's no lawyer involved? Well, that was the decision of the client. Yeah, but is it a decision that's contrary to law because the question is this. Would the most – an unsophisticated debtor think, well, in some way, some lawyer is involved in this? I'm not dealing with a collection agency that I can just poo-poo. I'm dealing with a lawyer somehow. Wouldn't an unsophisticated person think that? I think that you have, in recent cases, acknowledged that letters from attorneys do mean something more than a letter from an agency. What attorneys have to do is to ensure that the statements that they make in the letter are not false about involvement. But can a lawyer say the letter is not from a lawyer, qua lawyer, when it bears the letterhead of a lawyer? If he wanted to send a collection letter and see if it could be settled, why not send it on XYZ collection agency stationary with the exact same pitch to settle it? Well, I think in this case, I can't answer that question because I represent a law firm that was hired to send this particular letter. In general, what I'm understanding what you're saying is if a lawyer gets a case like this where all they're supposed to do is communicate a settlement offer, should they then pass it off to an agency to send that letter? I think that's certainly not what the Act says. I think there's nothing in the Act that says an attorney can't send a letter. And even if they don't want to sue, you just can't say anything false. There's no requirement of disclosure in the Act. There's three parts of the Act where you're required to say something. Yeah, but your position is that the attorney is not involved in this as an attorney. No, that's not my position. Your position is that the least sophisticated debtor is not going to think that if he doesn't pay this bill that there will not be legal consequences. Well, I don't know how you can get there based on the letter in this case other than to say the act of sending the letter. And the act of sending the letter in a strict liability statute would be it's unworkable. Then any attorney could never send the letter because there would be that implication. Ms. Needleman, if it's not your position that an attorney was involved, what is your position? My position is that the law firm was hired to send a settlement letter and their level of involvement was communicated truthfully. They are attorneys. In fact, I would say in this decision the court found the letter was from an attorney. It was an attorney communication. If we are to sit here and judge what they weren't really acting like lawyers, they are lawyers. They have a license. Isn't your dispute really with the language of Subsection 3?  Isn't that your dispute? No, my dispute is really with the holding of the district court that any letter from an attorney is actionable absent a disclosure from the attorney about their intent of litigation. That is an unworkable proposition under the FDCPA. It calls for an additional disclosure. As I said, it makes E-5 superfluous. And I think that a federal court, we all have ideas of what we think attorneys should be. Why is it unworkable? If you're sending a letter out and you're not sending it as an attorney, having right up front as part of the letter, no decision has been entertained as to legal action on this matter whatsoever. Because the statute doesn't call for that. That's why. The statute only has three mandated disclosures. Are you misleading the most of this? Absolutely not, because the statute says what you can't say and what you are required to say. And there is nothing in the statute that says I have to disclose an attorney-client privilege. I mean, one of the problems with the lower court's decision is they're talking about attorney intent. It's not attorney intent. I could have all the best intentions in the world. It's what my client wants me to do. Yeah, but you're talking out of both sides of your mouth now. You're saying you have an attorney-client privilege here. On the one hand, you can't disclose what your client wants to do. And on the other hand, you're saying I'm not sending this letter out as an attorney. I'm sending it out as a collection letter. So you're straddling both sides of the issue here. I certainly don't intend to do that. I apologize, Your Honor. I certainly want to clarify. I'm just saying, does your argument make sense? Because on the one hand, you're claiming I'm an attorney. I'm not going to tell you what my collection agency client wants me to do, whether they want me to sue in this case. On the other hand, you're saying, well, I sent this letter on my attorney stationary, but I didn't send it as an attorney, so I'm not bound. So you should be saying I'm not bound by or impeded by the Code of Professional Responsibility. Well, I think, first of all, the FDCPA, there's no place in the FDCPA for the Code of Professional Responsibility. Those are state issues. If someone doesn't like the way my client is acting as a lawyer, the client should be raising that issue. The ethics board should be raising that issue or disciplinary, whatever the case may be. And that is the problem I see with E3. E3 puts the cart before the horse. What appellees are really arguing here is not that the statement, no time attorney has reviewed this account. What appellees argue is the fact that they don't review it at all, that's what they don't like, and that's an FDCPA violation. And there's nothing in the Act that says that, nothing. The Act requires you to make three specific disclosures in the Act, and it tells you that you cannot make a false statement. And when you deal with E3, the false statement in Avila and Coleman, which is what was looked at internally. When you keep saying it says you can't make a false statement, isn't their entire argument about a false implication? I mean, E3 talks about implication. You've been careful to note that E5 doesn't. But E3 does, talks about implication, and Judge Smyser's opinion seems almost entirely to rest, maybe entirely to rest on the idea that there's an implication communicated when you get a letter from a law firm that isn't communicated when you get a letter from a non-law firm. And that that implication is, do what we say or we're going to sue you. Well, the problem with Judge Smyser's decision is that, I'm sorry. Don't go to what you see as the problem. I'm just, I'm going to ask you whether I am correct that E3 deals with implications and that Judge Smyser's opinion says there's an implication communicated when you get a letter from a law firm. Whether law firms like it or not, there's an implication there. Isn't that where he's coming down? I think. I think that is part of where he is coming down. So why is he wrong? And the reason that, and that's a problem because, again, it's the sending of the letter that he's saying is the implication. And if you look at the E3 cases and, quote, meaningful involvement cases, they all stem back to what the letter says. And it's not, in all those letters, those were egregious statements that were sent by the attorneys in those cases. I have received your file. We have concluded that we are going to file. Something very, very definitive that would make not even the least sophisticated consumer know that the attorney has actually picked up the file. That was really what those cases were about. Okay, Ms. Needham, we'll have you back for a second. I'm sorry. Thank you. You did reserve time for rebuttal. I did. I reserved five minutes. Did I go over? Yeah, but on my question at least. I'm sorry. Thank you. Mr. Lorenz. Good afternoon, Your Honors. Ted Lorenz from Lundy, Flitter, Velda, Coase, and Berger. I'm joined by Deanna Sirocco. Judge Count, I'd like to pick up where you left off, if you don't mind. Let's unveil something here, what's really going on. Well, I wish you would, but one thing I'm not too sure from your brief, whether you want us to hold, to affirm under 1692E or subsection 3 or 5. I'm not too sure whether we can affirm all three of those or exactly where you want this to be affirmed. I don't know your position. Sure, Your Honor. You could affirm under Section 1692E, if you like, as a general proposition that these letters are false, deceptive, or misleading. These subsections are simply there for illustrative purposes. You can choose to obviously look at E3, as you've discussed earlier today, and find that the letters are false, deceptive, or misleading as coming from an attorney when they are not coming from an attorney. When you say they are not coming from an attorney, what leads you to say that they're not coming from an attorney? The position stated by your opponent is this is coming from an attorney. It's coming from Mitchell K.'s law firm. Mitchell K. and nobody who carries a license to law read the file, but it's going out at their direction to offer settlement from that law firm. So what's false or misleading in a law firm saying, hey, look, haven't looked at this case yet, but if you want to settle up, you can do it for six cents on the dollar. That's the offer my client's prepared to make. Well, what's really happening here, Your Honors, is that Mitchell K. is a debt collector, and he happens to have secondarily a law license, and he uses his letterhead and sends it out. I don't think I'm getting an answer to my question. Take it away from Mitchell K. if you want. Assume it's lawyer X sending a letter to a consumer debtor, the least sophisticated consumer debtor, saying I haven't reviewed this file yet, but I'm authorized by my client to communicate a settlement offer to you, six cents on the dollar if you want to settle up. Now, under Judge Smyser's reasoning, the sending of that letter would imply further legal action and be actionable. Is that right? That's correct.  How does that reasoning comport with the language of the act? What in the act do you point to where you could say that the sending of a letter, which is entirely truthful in itself, can you point, by the way, to any language in the letter, either of the two letters at issue here, that are false? Any language. It's all implication is how I understand, but if there are words in there that are false, I'd like you to point them out to me. I don't know exactly that there are words in there that are false, Your Honor. So it's all implication. Is that right? Well, there are statements in there, certainly, that he is implying that he is involved in this matter, that he has been hired by, well, we could say has he been hired by Washington Mutual to collect this account. The record shows that he was not engaged directly by Washington Mutual. He was engaged by Plaza Associates to send out this letter. All right. And that is material, is it? Let's go past that, because that's not anything that Judge Smyser even hesitated for a moment on, right? He did comment on that. Unless I'm mistaken, the district court focused not on any language, but said entirely, look, the problem here is that you get something from a lawyer, there's an implication that there could be suit following. Is there any more to the district court's reasoning than that? Sure, Your Honor, there is. The gist of it, as I see it, is that a letter coming on attorney letterhead indicates that there's an attorney who has been retained to collect this account, as opposed to an attorney who is acting solely in the role as a debt collector. And the language offered in this letter does not clarify that. It doesn't tell the consumer, and it doesn't put terrestrial on the consumer's mind, as said in the bill, that the price of poker has gone up. It doesn't tell the consumer that I'm only acting here as a debt collector. So unless I'm misunderstanding, I think you just said what I said, which is this is an implication, right? Because there's no language in the letter that is relied on by the district court as being false. The district court says once there's a letter from a lawyer, the game is different. As you just put it, the stakes in the poker game have gone up. Certainly Judge Smyser was talking about a deceptive or misleading communication from an attorney, and there is certainly language in that letter where Mitchell K. says, please be advised that your account, as referenced above, is being handled by this account. Judge Smyser pointed out to that letter, to that language in the letter. And the law firm is handling that. Whether you want to make a distinction and say handling it not as a lawyer or handling it as a lawyer, the law offices of Mitchell and K. are handling the account, right? They're not handling the account at all, Your Honor. This whole, whatever handling is going on, the discovery in this case reveals that it's happening entirely mechanically and electronically. There's really no handling happening. You've got to stick with the record that we've got. The record we've got is a decision based on two letters, right? Isn't that the only thing? That's correct, Your Honor. That's the basis of decision here? There's two letters. So let's pay attention to what the district court was paying attention to. Two letters, and as far as I can tell, and you haven't directed me to anything to the contrary, entirely the decision rests on an implication which the district court says is unavoidable, which is that anything from a lawyer implies some kind of legal action. Is that right? Judge Smyser found it as follows, Your Honor. Here's how I see it. He said each letter plainly gives rise to the implication that an attorney is involved in the collection of a debt, and each letter implicitly threatens legal action. And then he went through his analysis in the case where he said when an attorney acting as a debt collector uses law firm letterhead, the attorney acting as a debt collector plainly is communicating to the debtor in his or her capacity as an attorney. Okay. Now, is that false? Is it false for a lawyer to say, I'm sending you this letter.  A law firm at a lawyer's direction sends a letter and says, I haven't looked at this. I'm authorized to communicate a settlement offer. That that implies that it implies anything more than it says. Where in the, maybe the better way to ask this question is, can you point me to language in either the act or in case law? But let's start with the act, which makes it unlawful for a lawyer to send a letter communicating a settlement offer and saying at the same time, I haven't reviewed the file. Certainly, Your Honor, the act prohibits false, deceptive, or misleading representations or means in attempting to collect a debt claim due. Where's the deception? Well, the deception here in this case, Your Honor, is that Mitchell K is not acting as an attorney when he sent out this letter. He's acting as a debt collector. He's sending out 15,000 letters a month electronically. That's the deception. And as this court has recognized, and other courts have recognized, that when the least sophisticated consumer receives a collection letter on attorney letterhead. All right. Talk about Greco. Greco case, Second Circuit, looks at language like this, says, you know, even the least sophisticated debtor can read. And we figure they're obligated to read. And if they read this, they'll understand what it says. Why is Greco wrong? Greco is different. It's confined to the facts of that case. Greco was decided on a motion to dismiss. It didn't have the record that we have here. The letters are different. In Greco, even if you're looking just at that disclaimer language, that was on the front, much like in Gonzalez, the Fifth Circuit found, with this same letter, by the way, this letter, there's some added language in this letter, which I'd like to point out where Mitchell K says, please visit our website to resolve this privately. And that strikes you as bad? It strikes me as a bit odd. Is it deceptive? Well, there's a corollary to if we can't resolve it privately, we'll resolve it publicly. Well, if the disclaimer in this case was on the back, as our prior case was on the back. That's correct. If this was on the front, and if it said up front, that I'm sending you this, my legal letterhead, but no legal action has been contemplated or is threatened, would that make any difference in this case? The problem I have in this case, Your Honor, is Mitchell K doesn't come clean on his role in the process. He's using the attorney letterhead to gain a competitive advantage in the market, which is exactly what the FDCPA does not want to see happen. So you've got a strict liability view of this, that no lawyer can use the lawyer's own letterhead ever in this manner. I mean, it sounds like what you're saying in response to Judge Cowen's question is it doesn't matter what the language is that was put in there by way of disclaimer. It's the fact that it's on a letterhead that makes it deceptive and misleading, right? Not necessarily, Your Honor. Well, what language would you use? Judge Cowen just gave you, hey, I promise I'm not going to be suing you. That's not what this is about language. And you said that's not enough. Your problem is with the role of the lawyer. And in your briefing, you say it. They're trying to have it both ways. They want to be treated as a law firm for purposes of letterhead, but they want to be treated as a debt collection agency otherwise. Yes. So if that's your assertion in your briefing and in response to Judge Cowen's question, isn't it the fact that what you're arguing for is a rule that law firms can never use their letterhead in debt collection efforts? Isn't that the import of your argument? No, it's not, Your Honor. What's your argument? What rule are you asking for here? Well, the rule would be if I'm sending out debt collection letters, which I'm not doing, but if an attorney is sending them out, that the attorney behave like an attorney, a real attorney should, that there's involvement in the letter. That there's involvement by what? There's involvement by whom? By the attorney. By the attorney. As Judge Cowen was alluding to, there's options here. If they really want to act more like a debt collection agency, then it could be the offices of Mitchell & Kay sending out $15,000 a month. You know, the more I listen to this case, the more secuitous it gets. Okay. You're saying that Mitchell & Kay argues they didn't hold themselves out as an attorney. Correct? What is being said there, Your Honor, is that there is a letter on attorney letterhead purporting to come from an attorney who is not acting like an attorney. Okay. Yeah, so you're saying that they were not holding themselves out as an attorney. Well, they're falsely and deceptively and misleadingly holding themselves out, Your Honor, in this instance. You're saying that they sent this letter out under the guise that they were non-attorneys, that this was coming from a non-attorney, correct? That's it. They're acting more as a debt collector. Okay. And as a consequence, if you say that, then you fall within the example given in 3 that there's a false representation or implication that an individual was an attorney or that the communications from an attorney, when under your view of this, they weren't an attorney even though they had a law firm letterhead. That's right. Correct? When these letters were sent, it was not coming as an attorney as we would And the fact that the reader would look at that and say, whoops, I just got this notice that I can get a discounted settlement and it comes from a law firm, I better get a little more serious about this account than I had in the past. That's correct. Correct? Correct. But they flip it over and the disclaimer says, an attorney has not reviewed this account. Right? That's what the letter says. Okay. What's wrong with that? They tell them to look at the other side. Well, certainly it's right. I mean, what's the rule that you want us to say? What should Mitchell K. and others like them in the future do to comply with the Fair Debt Collection Act? Well, there's a few options here, Your Honor. They could send out letters under the offices of Mitchell and K. when they're sending out mass mailings that are mechanically done and electronically done. That's an option. They could go to the FTC and ask for some type of advisory language. That's always a possibility. Judge Sotomayor recommended that in the German case as well. They could also act like attorneys should act and like a real attorney should act. As the court recognized in Burgos and as the court recognized in Avila, that you have to have some considered judgment, exercise some discretion, have some professional involvement in it, that it's not just hit a button, 15,000 letters go out this month. That's not what that's about, and that is not what when the least sophisticated consumer receives the attorney. So aren't you back to the strict liability then? Aren't you saying, because you keep going back and saying, act like a real lawyer should. Isn't that just a way of saying real lawyers don't send out mass mailings ever? Well, Your Honor, I don't think they're sending out 15,000-plus collection letters without exercising some professional judgment. So you want us to read into the Fair Debt Collection Act a rule that attorneys on their letterhead may not send mass mailings ever, right? I'm having a hard time. If your answer to that is no, you've lost me, because I hear you say real lawyers don't do that, and that's your fundamental problem. If that's your fundamental problem, isn't that the rule you're driving for? You could certainly have more lawyers on staff to help review the files. That's an option. There's plenty of options here. But Mitchell K. says, in effect, that they had an attorney reviewing this process. They said Mr. Siegel was involved in this. As I looked at Mr. Siegel's deposition testimony, he, as I recall, testified that he reviewed the form letter and was very clear in his testimony that even whether an account was in bankruptcy or had a statute of limitations issue, that was done by Plaza Associates. That really, any kind of- He never looked at the merits of the claim, whether it's a meritorious claim or not. Sure, they don't- Let me just, I'd just like to refine this down to a rule of law. Is your argument this, that we should write an opinion to the effect that an attorney violates this act if he sends out a collection letter when the attorney is not engaged by the client to send out that letter as a collection effort? Because in this case, none of the creditors were clients of the attorney. Never spoke to the attorney directly or indirectly. Well, that's true. Washington Mutual was not a client. So we have to resolve this down to some sort of rule of law. And your argument would be that an attorney violates the act if he sends out a collection letter when, as I understand your briefing, the attorney has had no meaningful relationship with the collection, the merits of the collection that he's trying to resolve. Is that your position? Am I misreading it? No, Your Honor. The position is that, as stated in Section 1692E, no debt collector can send out a false, deceptive, or misleading communication. And one of the prohibitions says it cannot falsely represent or imply that any communication is from an attorney. And in the case law, that has meaning. A communication from an attorney has meaning because it has an impact. It escalates the situation. It has an effect. What was false here was what? The fact that it came on a letterhead of a lawyer? In other words, lawyers, many lawyers. I've sent out collection letters myself. Many letters come from lawyers, which are referred to by clients for collection. What is the rule of law to make a letter false and deceptive? When I've said it, when I've spoken to my client, and in other instances. What's false and deceptive about the act in this, the facts which are false and deceptive here that we can say are a violation of the act? Sure, Your Honor. The deceptive and misleading components in this case are that there's a debt collection letter going out an attorney letterhead, which, as I said earlier, it has meaning. It has impact. But that's not the case. Certainly the discovery in this case showed that this was not sent out by an attorney. It was sent out by a debt collector purporting to be an attorney at that moment. And the disclosure that's being offered is not clear, and it's not effective in terms of this case right here. It doesn't say, if I may, Your Honor, it doesn't say I'm acting only as a debt collector right now and not in my role as an attorney. It just doesn't provide that. It says that it's not. What is it in the letter that communicates that they're not acting as just who they purport to be, the law offices of Mitchell N.K., communicating a settlement offer? That's exactly it, Your Honor. This letter doesn't indicate what their role is. That's exactly the problem. It's the discovery in this case which takes the veil off and shows exactly what's going on, that Mitchell K. I'm struggling with the veil. Where's the veil? The veil is that when you look behind the scenes, what you see is a law firm acting like a debt collection agency. What you see is maybe what they said in the letter. No lawyers yet looked at your particular file. But why does any of that matter? I mean, why don't we have to decide this case based on the letter? Because the letter is all that the consumer has. Well, that's true. The consumer receives this letter and says, as in the price of poker has gone up here today. Now there's a law firm on this, and there's a process. I mean, I question whether this is even a collection letter. It's almost a letter that's a notification. Hey, you can settle this account by paying either 75% or in the second letter you can pay 60%. Well, this is a collection communication, Your Honor. It clearly indicates in the first letter, the account's being handled by this office. We've been authorized to offer this. If we can't resolve it privately, et cetera, contact us. Isn't it like the letter in Campuzano-Burgos where the court was specific in saying in a footnote that some sloppy legal work before maybe had treated Dunning letters the same as settlement letters, but there's a meaningful difference? No, Your Honor. This letter is entirely different than what was before the court in Campuzano. I'm not talking about who it went from. I know it was executives in that case, and it's from a law firm in this case. But it's a settlement offer, right? Both letters are settlement offers. Sure. In this instance, it is offering to settle the account. All right. Your red light's on. Let me ask you one last question. Yes, Your Honor. If the disclaimer was on the front of this letter, would you have a claim? Yes. It doesn't clearly state the role of the attorney or the debt collection agency in sending out this letter. It just doesn't state it. And Gonzales addressed the same letter and arrived at the same conclusion. And arrived at the same conclusion only on the basis that it was on the back page, right? I mean, that was the only distinction that they drew between their case and Greco, and they got taken to task by the dissent for it, right? Well, Gonzales also found that that disclosure was just ineffective. No, it didn't. I thought Gonzales said very specifically, it's on the back page and that's the problem. And that's what Judge Smyser pointed out in the opinion that you're resting on here today and rejected. He said, I'm not buying it. Back page, front page, doesn't make a difference to me. But to the Gonzales majority, it was the back page that made the difference, right? That was part of it, Your Honor. The court also said that the disclaimer on the back of the letter completely contradicted the message on the front of the letter and that it could be deceptive and gave a very stern warning and said, attorneys who send debt collection letters must clearly, prominently, and conspicuously state that although the letter is from a lawyer, the lawyer is acting solely as a debt collector and not in any legal capacity. Okay, Mr. Lorenz. Thank you. Thank you very much. Ms. Needleman. Ms. Needleman, we gave you considerable time. I know. Okay. I appreciate it. I think Mr. Lorenz clearly pointed out the argument that I do want to make in rebuttal is that he's really asking that the FDCPA uses an ability to regulate attorneys, and you can't. He keeps going back to they're not real lawyers. That wasn't even found in the lower court decision. The lower court said this was an attorney communication. It was from a lawyer. The record reflects that these are attorneys. What ultimately is they don't like the way they practice law, and maybe it is, maybe it isn't, but is the FDCPA enacted for that purpose? No. That's a matter for the states. That's a matter, as I said, for the Ethics Board, AG. All the FTC regulates is false to the extent that communications are made and if they're made false. You don't deny two points that Mr. Lorenz made. Number one, none of these collection letters spoke to the attorney or had any direct communication with the attorney as to collecting the account. And secondly, the fact that the letter is from an attorney with attorney letterhead, that there is an implication that if it's not settled, there could be legal action which would follow. Those are two of the implications of your adversary's argument. Those are his arguments, and that's what the lower court said. You deny the first that none of the clients here, the so-called creditors, had any direct contact with the attorney. The record reflects that. That is correct. And secondly, you can't deny this or not, but his position is that the most unsophisticated debtor would think that when I get a letter from a lawyer, even though it says we want to settle the case, that litigation is behind the curtain. Well, I think that that is his argument. My response to that is that this court and many courts have said it has to be a reasonable interpretation and it can't be bizarre and idiosyncratic. In this case, where there is no mention of lawsuit, the only mention of issue of lawsuit is by implication in sending the letter. It's strictly implication. It's strictly implication. There is nothing in these particular letters that said anything about suit, fine, penalty, cost. It didn't even say retained. It said creditor, and it said being handled at our office. If we want to maybe go down that path that handle was the wrong word, then maybe we can go down that path. But I would submit to this court that both these letters said nothing about litigation and said at this time I haven't even made a determination about what this case is about. But you're not dealing with a debtor that's a Ph.D. I understand that, Your Honor. You're dealing with someone that owes money and gets a letter from a lawyer. What is his thought if he doesn't settle it? But this court has said time and time again that we understand the level of the least sophisticated consumer, but you can't have bizarre and idiosyncratic interpretations and that even the least sophisticated consumer must read the letter as a whole. So you keep going. The issue really is the implication of sending the letter. And if that's the act that the lower court is saying is wrong, that completely goes against what the statute says. Is there any implication that litigation will follow if you receive a letter seeking collection from a lawyer? No, I don't. And I think there's numerous district courts that we cited in our brief that have said absolutely not. There has to be something in the substance of the letter that gets you there. Courts all over the country have concluded that same issue. In summation, isn't your position, and I noted the amicus briefs filed by the two organizations, isn't your position that it's wrong for the court to have said that the mere use of law firm letterhead to collect consumer debts when there's not been an attorney involvement is per se a violation? Aren't you saying that that's wrong? Yes, absolutely. And why? I mean, why is the district court wrong with that when, in fact, if that's your position, it seems to me that that clearly flies in the face of the example in three. I will answer your question. This is a strict liability statute. If the act of sending the letter is the violation, and as I said before, E-5 becomes superfluous. It has no meaning. Because at the end of the day, you have to look at the substance of the letter. And E-3 requires you to look at the substance of the letter to make the determination of what was the attorney participation. And so if attorneys cannot send letters because any letter we send, no matter what we send … If law firms cannot send a letter and it's irrelevant what we have in the substance … It seems to me that that's what Congress determined. I'm sorry? It seems to me that that's what Congress determined, rightly or wrongly. They said, look, if you're a law firm and you're going to send these debt collection letters, you've got to act as a lawyer. No, but the Congress – no, there's nothing – I disagree respectfully. What Congress said is any – remember, lawyers are debt collectors, so they all fall under the same realm. You cannot send a letter that is false. There is nothing in the scope of the act that says anything about involvement. It says that the letter can't be false. Now, you can look at that letter, and if there's something in the letter that would make the least sophisticated consumer think that there was involvement, that you picked up the file or you did something, and you didn't, as in Rosenau, then it's false. But attorneys have to be able to send letters, even – and this case certainly highlights it, because all they wanted to do was send a letter to communicate a settlement. But I think the distinction is you say attorneys need to be able to send letters, but at the same time you're arguing that you're representing a law firm that really wasn't an attorney when they were sending the letter. That's not what I'm arguing. That's not what I'm arguing. They were clearly lawyers, and they clearly conveyed their involvement to the creditor in the case. But the court said that was a circumstance that was per se illegal under the act. I'm not quite sure what the lower court said. Okay, but then you're saying that that's not what your position is. No, that is not. I mean, that's why we appealed the case. We believe that the letter did not convey anything false, didn't convey – their involvement in the letter was conveyed, and it was truthful. Okay, all right. Okay? Okay. Thank you, Your Honor. I understand your distinction. Thank you, Your Honor. We thank both counsel for their arguments and their briefs, and we'll take the matter under advisement.